TRUSTEES OF SCHOOLS, TOWN ONE, SOUTH, RANGE FIVE WEST, Plaintiffs in Error, *v.* SIRLEDON TATMAN, Defendant in Error.

### ERROR TO CLINTON.

A ferry franchise is not secured to the inhabitants of a township, by the ordinance of 1818, which provides that section sixteen in each township shall be granted for the use of schools.

A ferry franchise is not an incident to the ownership of land.

A party cannot exercise a ferry franchise on his own land without the consent of the State.

A franchise to a public corporation, is subject to the superintendence and control of the State, and may be modified or destroyed, as the exigencies of the public may demand, so that their property is not diverted from its uses and objects.

Trustees of schools are public corporations, to be controlled and regulated by the legislature.

The sale of school lands to a party who had a ferry franchise, would not be affected by a forfeiture of the franchise; the sale and franchise being independent, his title to the lots would not be affected by the loss of the franchise.

The State alone could insist upon a waiver or forfeiture of the ferry franchise.

THE school trustees filed their bill in the Clinton Circuit Court, setting forth, among other things, that section sixteen, in each township, is granted by law to the State for the use of the inhabitants of the several townships, for the benefit of schools. That section sixteen, through which the Kaskaskia River flows, is the major part thereof in Clinton county, and that on the same a ferry was regularly established, by an act of the legislature of 28th February, 1833. By the act regulating ferries, (Rev. Code of 1833,) whenever a ferry is upon school land, it shall be for the use of the inhabitants. By the act of 23d February, 1843, (Laws of 1843, p. 276,) the school commissioner of Clinton county was required to sell lots five and six in section sixteen, in town one, south, range five west, and the purchaser to have and enjoy the ferry privilege forever. Provided he would make, within three years, a good road above high-water mark, leading to the ferry across the bottom lands of said river, and that Tatman became the purchaser of the lots for the sum of four hundred and ninety-two dollars. The bill states, that before the expiration of the three years, Tatman, by fraud, obtained of the legislature the passage of a law (Acts of 1845) extending the time for completing the road, but that it was never completed; and that the legislature, at the session of 1851, (see Session Laws, p. 231,) repealed this proviso requiring the road to be built over the bottom land adjacent to the river. That, encumbered with the proviso requiring the making of the road, the land, worth $2,500, sold for but $492, and the inhabitants consequently lost the difference. The bill prays that the sale to Tatman may be declared void, on the ground that the legislature had not the power thus to appropriate the money of the schools, or the fund for their support, to the making of the road;

more especially as the road over the bottom lands, which was a part of the contract, has never been made. The bill alleges that the proceeds of the ferry amount to $500 a year, and prays for an account from Tatman.

A demurrer to this bill was sustained in the Circuit Court. To correct this decision of the Circuit Court, the school trustees sued out this writ of error.

Underwood, Judge, presiding in the Clinton Circuit Court, at October Term, 1851, rendered the judgment sustaining the demurrer.

S. Breese and D. White, for appellants.

G. Koerner, for appellee.

Treat, C. J. It is provided, by the ordinance of the 18th of April, 1818, that section sixteen in every township shall be granted to the State, for the use of the inhabitants of such township, for the use of schools. The act of the 28th of February, 1833, recognized a ferry, as regularly established across the Kaskaskia River, on section sixteen, township one, south, range five west, and conferred authority on the County Commissioners' Court to renew the ferry license to the trustees of schools, or the lessee of the section. In 1842, the school commissioner sold the whole of this section except lots five and six, which he withheld from sale for ferry purposes. The 2d section of an act of 23d of February, 1843, required the commissioner to sell the reserved lots, at public auction. The 3d section declared that the purchaser of the lots, might forever have and enjoy all the ferry privileges pertaining to the sixteenth section, provided he should, within three years, make the road leading through the bottom, to and from the ferry, above high-water mark. The lots were sold and conveyed to Sirledon Tatman, for the sum of $492. By an act of the 23d Feb. 1845, the time for the construction of the road was extended to the 1st of May, 1847; and the act of the 15th of February, 1851, repealed the 3d section of the act of February, 23d, 1843. In September, 1851, the trustees of schools filed a bill in chancery, against Tatman, setting forth

3 *

the foregoing state of facts, and alleging that lots five and six and the ferry privileges were worth, and would have brought at the sale, $2,500, and praying that the sale might be set aside, and Tatman held to account for the rents and profits of the ferry.   The court sustained a demurrer, and dismissed the bill.

It is insisted, that the act of 1843 appropriated the property of the township to the construction of the road; and, therefore, that the sale was invalid, and should be set aside.   We hold that the legislature has not attempted to exercise any such power.   The sale did not divert any portion of the property belonging to the township.   The act directed a sale of the land, but did not interfere with the proceeds.   It simply provided for a conversion of the land into money.   The proceeds were to go into the treasury of the township.   There is no pretence that the lots did not bring their full value.   The only complaint is, that a ferry franchise was not sold with the lots, and the gross proceeds added to the funds of the township.   The township had no rights in a ferry franchise, that were not subject to the entire control of the legislature.   The ordinance secured the sixteenth section to the inhabitants of the township, for the use of schools. But they did not thereby acquire any right to a ferry franchise. Such a franchise is not an incident to the ownership of land.   A party cannot exercise a ferry franchise on his own land, without the consent of the State.   Franchises are creatures of the sovereign power, which it may grant or refuse at pleasure.   Even if a franchise to keep a ferry on the sixteenth section had been granted to the trustees, it was competent for the legislature to revoke it.   A grant of this character to a public corporation, may, at any time, be resumed by the State.   It is not like the case of the grant of a franchise to an individual, or a private corporation.   Public corporations are but parts of the machinery employed in carrying on the affairs of the State; and they are subject to be changed, modified, or destroyed, as the exigencies of the public may demand.   The State may exercise a general superintendence and control over them, and their rights and effects, so that their property is not divested from the uses and objects for which it was given or purchased.   That the trustees of schools are corporations of this character, and subject to be

regulated and controlled by the legislature, is fully established by the cases of Bradley *v.* Case, 3 Scam. 585, and Bush *v.* Shipman, 4 Scam. 186. If the legislature can direct the school lands to be converted into money, and permit the debtors to the school fund to discharge their obligations in bank-notes, or other securities, it may certainly take away from the trustees of a township a mere franchise to keep a ferry.

The sale of the lots, and the grant of a ferry franchise to the purchaser, were independent matters. The purchaser was permitted to have the franchise upon the performance of certain conditions. He was to construct a road, as an equivalent or compensation for the ferry privilege. The lots formed no part of the consideration for making the road. The purchaser was at liberty to accept or refuse the franchise. If accepted, a failure to construct the road would not affect his title to the lots. It could work a forfeiture of the franchise only. And the State alone could insist upon or waive the forfeiture.

The decree is affirmed. *Decree affirmed.*