# A. P. GODDARD *et al.*

*v.*

# THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

*Opinion filed April 24, 1903.*

1. INJUNCTION—*when order dissolving injunction is a final disposition of the case.* An order dissolving an injunction for want of equity apparent upon the face of the bill is a final disposition of the case where injunction is the only relief sought by the bill, and as such order, in effect, denies relief, it is proper to dismiss the bill.

2. STREET RAILROADS—*county board may grant rights to corporations only.* The Street Railroad act of 1899 (Laws of 1899, p. 331,) by its terms authorizes the county boards to grant street railroad privileges over highways outside the corporate limits of cities, towns or villages only to companies incorporated under the general laws of Illinois, and not to individuals or partnerships.

3. SAME—*act of 1899 cannot be construed to apply to individuals.* The Street Railroad act of 1899 cannot be extended, by construction, to apply to individuals, since that would give to individuals the sovereign power of eminent domain, and cannot be adopted unless both the letter and the spirit of the act clearly so require.

4. SAME—*legislative reason for limiting grant to corporations is not material.* That no good reason may exist why individuals should not be entitled to the privileges conferred by the Street Railroad act of 1899 upon incorporated companies is not ground for extending its scope by construction, since the legislative reason for limiting such powers to corporations is not a question for courts.

5. SAME—*words "incorporated companies" cannot be construed to include individuals.* The rule laid down by the legislature for the construction of statutes, that the word "person" or "persons" shall include bodies politic and corporate as well as individuals, does not authorize construing the words "incorporated companies" to include individuals. (*Chicago Dock Co.* v. *Garrity*, 115 Ill. 155, and *McGann* v. *People*, 194 id. 526, explained.)

6. SAME—*word "company," used in Street Railroad act, does not refer to partnership.* The words "such company," used in section 3 of the Street Railroad act of 1899, refer back to the words "any company which has been or shall be incorporated under the general laws of this State," used in section 1, and do not refer to partnerships.

7. CONSTITUTIONAL LAW—*right to operate street railway is not a constitutional right of individuals.* The right to operate a street railway and exercise the power of eminent domain is a franchise conferred by sovereign power, and is not a calling or trade, the right to follow which is guaranteed by the constitution to every individual.

*Goddard* v. *C. & N. W. Ry. Co.* 104 Ill. App. 526, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. JAMES S. BAUME, Judge, presiding.

OSCAR E. HEARD, for appellants:

Since the dissolution, by a judge, of a temporary injunction is not a decision upon the merits of the bill, the complainant will not be precluded, by, virtue of such dissolution, from a final hearing upon the bill.    2 Spelling on Injunctions, sec. 959; *Clabby* v. *Sheldon*, 47 Ill. App. 166; *Barnes* v. *Racine*, 4 Wis. 483.

A law should be so construed as to render it valid and constitutional, when possible. *People* v. *Thornton*, 186 Ill. 162; *People* v. *Gaulter*, 149 id. 47; *People* v. *Bridges*, 142 id. 36; *People* v. *Nelson*, 133 id. 576; *Havens* v. *Diamond*, 93 Ill. App. 558; *Waukegan* v. *Foote*, 91 id. 590; *Hutchinson* v. *Davis*, 58 id. 362; *Swigart* v. *People*, 50 id. 186.

Laws which interfere with the personal liberty of the citizen and his right to pursue such avocation or calling as he may choose, cannot be constitutionally upheld unless the public health, safety, comfort or welfare demands their enactment. *Ruhstrat* v. *People*, 185 Ill. 133; *Bailey* v. *People*, 190 id. 98; *Bessette* v. *People*, 193 id. 334.

An act which arbitrarily discriminates against one class in the transaction of a business of a lawful nature and leaves unaffected other persons or classes engaged in acquiring property in the same manner as those discriminated against, is in contravention of the constitutional guaranties respecting liberty or property. *Bailey* v. *People*, 190 Ill. 98; *Bessette* v. *People*, 193 id. 334.

The words "railroad company" must be construed to mean individuals, as well as corporations. *Dock Co.* v. *Garrity*, 115 Ill. 164; *McGann* v. *People*, 194 id. 526.

Franchises for the construction of street railways may be granted to individuals. Nellis on Street Surface Railroads, 8; Booth on Street Railways, sec. 2; 1 Rorer

on Railroads, 8; *Relation of Kerr*, 42 Barb. 119; *Henderson* v. *Ogden*, 26 Pac. Rep. 286; *People* v. *Railway Co.* 50 Barb. 309; *Chicago Dock Co.* v. *Garrity*, 115 Ill. 167; *Truesdale* v. *Grape Sugar Co.* 101 id. 561; *Mills* v. *Parlin*, 106 id. 60; *Nash* v. *Lowry*, 33 N. W. Rep. 788; *Budd* v. *Multnomah*, 15 Ore. 404.

S. A. LYNDE, (A. W. PULVER, and LLOYD W. BOWERS, of counsel,) for appellee:

As the only relief sought by the bill of complaint was an injunction, and as the court, upon the bill and answer, sustained the motion of defendant to dissolve the injunction, and upon the hearing of the bill and answer found that the bill was without equity on its face, the circuit court properly rendered its decree dismissing the bill. *Clabby* v. *Sheldon*, 47 Ill. App. 166; *Prout* v. *Lomer*, 79 Ill. 331; *Smith* v. *Kochersperger*, 173 id. 202; *Railroad Co.* v. *Railroad Co.* 184 id. 592; High on Injunctions, sec. 1706.

The board of supervisors of Stephenson county had no power or authority to grant to individuals the right to operate and maintain street railway tracks upon or along public highways without the limits of any incorporated town, city or village. Hurd's Stat. chap. 131*a*.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, Alpheus P. Goddard and Alpheus J. Goddard, filed their bill in the circuit court of Stephenson county against the appellee, the Chicago and Northwestern Railway Company, alleging that complainants were engaged in constructing a street railway in the city of Freeport and in public highways in said county outside of said city; that the board of supervisors of said county granted to them the right to construct, operate and maintain lines of street railway upon certain highways not within any incorporated city, town or village, among which was a highway called "Gund avenue," in the town of Freeport, outside of said city; that said

grant was duly accepted by complainants; that the railway of defendant crosses said highway with its tracks; that complainants located their street railway in said highway across said tracks and commenced the construction thereof, and that defendant prevented them from crossing its railway with the tracks of their street railway and from placing trolley wires over and across its said railway. The bill prayed for an injunction restraining defendant from hindering, delaying or preventing complainants from constructing their street railway and laying the tracks thereof across the right of way and railway tracks of the defendant, and from interfering with the operation of such street railway and the running of cars on the same. On the filing of the bill a temporary injunction was granted. Defendant filed its answer, setting up, among other things, that the board of supervisors of Stephenson county had no power to grant to appellants any right to construct and operate a street railway in or upon the public highway, and defendant then filed its motion to dissolve the temporary injunction. On the hearing of the motion the court dissolved the injunction, and afterward dismissed the bill for want of equity upon its face. The Appellate Court affirmed the decree.

The first complaint is, that the court dismissed the bill and did not retain it for a final hearing upon the merits. When an injunction is collateral to the main object of a bill, and other relief is sought which may be granted upon final hearing, the bill should not be dismissed on dissolution of the injunction, but should be retained and proceed to such final hearing. When the only relief sought by the bill is an injunction, an order dissolving the injunction for want of equity apparent on the face of the bill is, in effect, an order denying all relief, and is a final disposition of the case. In such a case it would be entirely useless to go through the form of making proof of the allegations of the bill. In this case

the only relief prayed for was an injunction to restrain
the defendant from interfering with or preventing the
complainants from constructing, maintaining or oper-
ating their street railway across the right of way and
tracks of the defendant.  The order dissolving the in-
junction disposed of the entire case, and it was proper
practice to dismiss the bill.  (*Titus* v. *Mabee*, 25 Ill. 232;
*Prout* v. *Lomer*, 79 id. 331.)  The decree dismissing the
bill recited that the cause was heard upon the bill and
answer, but it dismissed the bill "for want of equity
appearing upon the face of the bill," and not upon a
consideration of facts set up by the answer.

To entitle complainants to the protection of a court
of equity in laying their railway tracks and putting up
their trolley poles and wires in the highway it was nec-
essary to show that they had a right to occupy the high-
way for that purpose.  Their bill showed that they based
their right to construct and operate the street railway
in the highway upon a license granted to them by the
board of supervisors of Stephenson county.  The power
of the board of supervisors to grant such a license is
challenged, and the material question is whether the law
conferred upon the board any authority to make such a
grant.  If the board had such power, it is to be found in
an act in regard to street railroads, approved March 7,
1899.  (Laws of 1899, p. 331.)  Section 1 of that act pro-
vides: "That any company which has been or shall be
incorporated under the general laws of this State for the
purpose of constructing, maintaining or operating any
horse, dummy or street railroad or tramway,  *  *  *
may, subject to the provisions contained in this act,
locate and construct its road upon and over any street,
alley, road or highway, or across or over any waters in
this State, in such manner as not to unnecessarily ob-
struct the public use of such street, alley, road or high-
way, or interrupt the navigation of such waters." Section
3 provides as follows: "No such company shall have the

right to locate or construct its road upon or along any street or alley, or over any public ground in any incorporated city, town or village without the consent of the corporate authorities of such city, town or village, nor upon or along any road or highway, or upon any public ground without any incorporated city, town or village, except upon the consent of the county board. Such consent may be granted for any period not longer than twenty years, on the petition of the company, upon such terms and conditions not inconsistent with the provisions of this act, as such corporate authorities or county board, as the case may be, shall deem for the best interests of the public." Other provisions of the act authorize the exercise of the right of eminent domain when necessary for the construction, maintenance or operation of such road, with the necessary sidings, side-tracks or appurtenances, and require that the consent of the public authorities shall be subject to the condition of payment of damages to the owners of property abutting upon the street, alley, road, highway or public ground upon or over which the road is to be constructed, and also subject to the right of the proper authorities to control the use, improvement and repair of the street, alley, road, highway or public ground to the same extent as if no grant had been made, and to make all necessary police regulations concerning the operation and management of the railroad. The act, by its terms, only authorizes the board to make grants of the character in question to companies incorporated under the general laws of this State for the purpose of constructing, maintaining or operating horse, dummy, street railways or tramways.

Counsel for complainants contends in argument that the statute should be so construed as to extend its terms beyond their natural and obvious meaning, so as to include individuals and partnerships, which would be contrary to the established rule in such cases. If the act should be extended beyond its terms, so as to embrace

individuals, it would extend to them the right to exercise the sovereign power of eminent domain for the purposes of their street railways, and statutes conferring such powers are to be construed strictly. Unless both the letter and the spirit of the statute confer the power it cannot be exercised, and if the words of a public grant are doubtful, they are to be taken most strongly against the grantee. *City of East St. Louis* v. *St. John,* 47 Ill. 463; *Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 id. 449; *Harvey* v. *Aurora and Geneva Railway Co.* 174 id. 295.

It is argued in favor of the construction contended for, that there is no good reason why the legislature should not give to individuals the right to construct and operate street railroads in public highways, or why they might not delegate to individuals the right to exercise the power of eminent domain for such purposes. Whether that is so or not is immaterial in this case, since the question here is not whether the legislature might have granted such rights to individuals or delegated authority to the board of supervisors to do so, but whether they have granted to the board of supervisors such authority. The question is not whether a natural person, if the law so provided, might acquire a right of way, exercise the right of eminent domain and enjoy the franchise to operate a street railway, but whether the law does so provide, and if it is clear that it does not, the complainants acquired no right by the action of the county board. The legislature had power to limit the authority of the county board to grant a license to incorporated companies created under the general laws of the State for the purpose of constructing and operating street railways, and it is not material what reason existed for prescribing the limit. It was a case for the exercise of the legislative judgment, with which we are not concerned.

Counsel also invokes, in support of the construction contended for, the general rule No. 5 laid down by the legislature for the construction of statutes, as follows:

"Fifth—The word 'person' or 'persons,' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals." (Hurd's Stat. 1899, p. 1649.) This provision is limited by the act to cases where such construction would not be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute, and it clearly would be in violation of that limitation to construe this act, embracing by its terms only incorporated companies, so as to include natural persons. "Person" is a generic word of comprehensive nature, embracing both natural and artificial persons, such as corporations; but to say that a description of the specific class of artificial persons known as corporations shall embrace all persons, both natural and artificial, would be to reverse both the rule and the reasons upon which it is founded.

It is also urged that the use of the word "company" in the act authorizes a construction including persons and partnerships, because the word "company" is used to designate several persons or a partnership. "Company" and "corporation" are commonly used as interchangeable terms, and it is plain that they were so used in this case. The act, in using the words "such company," plainly refers to a company of the kind mentioned in section 1, which is a "company which has been or shall be incorporated under the general laws of this State." If there is no inherent reason why the legislature should not have included individuals in the provisions of the act, it is clear that they did not see fit to do so.

Counsel relies with much confidence upon the decisions in *Chicago Dock Co.* v. *Garrity*, 115 Ill. 155, and *McGann* v. *People*, 194 id. 526, as holding that authority may be granted to individuals to lay tracks in the streets of a city. Neither of those cases involved in any way the right of an individual to operate a railway and carry passengers or freight for hire, or to enjoy a franchise of

that character. In the first case an ordinance was passed authorizing partners to lay down a railway track in a street in Chicago to their warehouse, to give access to the tracks of a railway company. It had been held that there might be a grant to individuals of the right to lay tracks connecting their manufacturing establishments with railroad tracks·previously laid, which became, in legal effect, the tracks of the railway· company with which they were connected. (*Truesdale* v. *Peoria Grape Sugar Co.* 101 Ill. 561; *Mills* v. *Parlin,* 106 id. 60.) In reference to the ordinance then involved, it was agreed on both sides that the city council had power to authorize the laying of the track, and the controversy was as to the limitations under which the power could be exercised. The question of limitation was decided, and it was also held that such tracks, if laid, would be open to the public use and under the public control in all respects as other railway tracks of the corporation with which they were connected. In the second case the question was again concerning the limitations imposed upon the power to grant a right to lay a switch track from a railroad to a warehouse. It was said that ordinances of that character had been held valid upon the ground that the track is only an extension of the track of the railroad company, and the grant is, in effect, a grant to the railroad company to lay its track in the public street, through the individual presenting the application. Neither of those cases is authority for the position assumed by counsel.

Another branch of the argument in support of the bill is, that the statute must be construed to include individuals because any other construction would be contrary to the constitution of the State of Illinois and the constitution of the United States. These fundamental laws secure to every individual the right to choose his own occupation, to pursue any ordinary calling or trade, and to acquire, hold and sell property. Counsel says that this includes the right to follow the occupation of construct-

ing and operating street railways; that the legislature have no right to prohibit an individual from purchasing and operating a street railway, and that any law discriminating against the individual and in favor of the corporation, in the right to follow such an avocation, would be unconstitutional. The obvious reply is, that the operation of a street railway is not one of the ordinary avocations to which the constitutional provisions apply. It is a special privilege conferred by the government, which does not belong to citizens of the country generally, by common right. The right to operate a street railway and collect fares for carrying passengers, and the power to exercise the right of eminent domain, are franchises. No private person can establish a toll bridge, public ferry or railroad, or enjoy the franchise connected therewith, without authority from the legislature, either directly granted or by the exercise of legislative power through delegation to a municipality. (2 Smith's Law of Mun. Corp. sec. 1702.) A franchise is a special privilege conferred by grant from the sovereign power, not belonging to the citizen of common right. It must be derived from the laws of the State and emanate from the sovereign power, and it cannot be exercised by an individual on his own lands without the consent of the State. *Trustees of Schools* v. *Tatman*, 13 Ill. 27; *Board of Trade* v. *People*, 91 id. 80; *Chicago and Western Indiana Railroad Co.* v. *Dunbar*, 95 id. 571.

Complainants sought an injunction to restain defendant from interfering with their alleged property right, and on the face of their bill showed that they had no right to do that which they asked the court to protect them in doing. The bill showed that they asserted a right which had no foundation in law, and the court was right in dissolving the injunction and dismissing the bill.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*