(No. 41874.—

COLES-MOULTRIE ELECTRIC COOPERATIVE, Appellant, *vs.* ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

*Opinion filed November 26, 1969.*

Ryan and Heller, and Sims and Grabb, both of Mattoon, (Willis P. Ryan and Nolan K. Sims, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, (Edward G. Finnegan, Special Assistant Attorney General, of counsel,) for appellee Illinois Commerce Commission.

Nafziger & Otten, of Springfield, (Elmer Nafziger, of counsel,) for appellee Central Illinois Public Service Company.

Mr. Justice Ward delivered the opinion of the court:

Coles-Moultrie Electric Cooperative, the appellant and hereafter Coles-Moultrie, filed a complaint under section 7 of the Electric Supplier Act (Ill. Rev. Stat. 1967, ch. 111⅔, par. 407), seeking a determination by the Illinois Commerce Commission whether Coles-Moultrie or Central Illinois Public Service, hereafter CIPS, is entitled to provide wholesale electric service to the village of Bethany in Moultrie County. The Commission dismissed the complaint on the ground that it was without jurisdiction to make the determination. The circuit court of Moultrie County, on ad-

ministrative review, affirmed the Commission's dismissal order and Coles-Moultrie appeals directly to this court under our Rule 302.

The village of Bethany since 1916 has owned, operated and maintained an electric utility which serves about 450 residents of the village. Because of the age and inadequacy of its generating equipment, the village decided to purchase wholesale electric energy from an outside source and to distribute the electricity to its customers through the village's existing distribution system.

Coles-Moultrie is an electric co-operative as defined by section 3.4 of the Electric Supplier Act (Ill. Rev. Stat. 1967, ch. 111⅔, par. 403.4) and an electric supplier as defined by section 3.5 of that Act (par. 403.5), but it is not a public utility under section 10.3 of the Public Utilities Act. (Ill. Rev. Stat. 1967, ch. 111⅔, par. 10.3.) It has a substation about one half mile from the corporate limits of Bethany. Coles-Moultrie wishes to extend a transmission line from this substation to Bethany and provide wholesale electric service for the village.

CIPS is also an electric supplier as defined by section 3.5 of the Electric Supplier Act and is a public utility as defined by section 10.3 of the Public Utilities Act. The Commerce Commission has granted a certificate of public convenience and necessity to CIPS to construct, operate, and maintain a 69 KV transmission line approximately 32.3 miles in length from a substation located about 1½ miles west of Mattoon to a substation 6 miles northeast of Moweaqua and to transact an electric public utility business in connection with the operation of this line. This proposed transmission line would extend through the corporate limits of Bethany. CIPS also wishes to provide wholesale electric service to the village.

The application of CIPS for the issuance of the described certificate of public convenience and necessity was filed on March 13, 1967. On April 10, 1967, Coles-Moultrie

filed a motion to be heard in that proceeding under the Public Utilities Act, and on the same day it also filed the complaint concerned in this appeal under the Electric Supplier Act. In its motion to intervene in the proceeding of CIPS for the certificate of public convenience and necessity, Coles-Moultrie alleged that CIPS was representing to the Commission that the proposed transmission line was needed as a second source of electric supply to the area of the village of Moweaqua but that the real purpose of the proposed transmission line was to provide wholesale electric power to the village of Bethany.

On April 19, 1967, the Commission denied the motion of Coles-Moultrie to be heard in the proceeding under the Public Utilities Act and assigned as its reason: "After passage of the Electric Supplier Act, a new paragraph was inserted under Section 55 of the Public Utilities Act which states that 'No electric cooperative shall be made or shall become a party to or shall be entitled to be heard or to otherwise appear or participate in any proceeding initiated under this section for authorization of power plant construction and as to matters as to which a remedy is available under the Electric Suppliers Act.' A remedy is available to the Cooperative [Coles-Moultrie] under the ESA [Electric Supplier Act] if and when Petitioner [CIPS] provides wholesale electric service to Bethany since Section 8—Complaints —of the ESA provides that 'The Commission, however, shall give no weight or consideration to the fact that any supplier has or has not been issued a certificate of public convenience and necessity in the areas proposed to be served.' "

Coles-Moultrie did not appeal from the denial of its motion to intervene in that proceeding and on May 17, 1967, the Commission granted the certificate to CIPS.

On June 1, 1967, the president and board of trustees of the village of Bethany adopted an ordinance authorizing a contract between the village and CIPS for the purchase by

the village of wholesale electric energy. Under the agreement the village would construct a 69 KV transmission line from the CIPS line to the village substation, a switching structure and a metering station.

On June 7 and June 29, 1967, a hearing was had on the complaint filed by Coles-Moultrie under the Electric Supplier Act. The complaint alleged that the sole or principal purpose of the proposed transmission line to be constructed by CIPS was to provide wholesale power to the village of Bethany and that the statutory considerations upon which the Commission was to make a determination as to which of two suppliers might furnish electric energy to a customer favored Coles-Moultrie and it asked that Coles-Moultrie be permitted to furnish wholesale electric power to the village of Bethany. On January 17, 1968, as stated, the Commission dismissed the complaint on the ground that it was without jurisdiction to make the determination sought by Coles-Moultrie.

Section 2 of the Electric Supplier Act (Ill. Rev. Stat. 1967, ch. 111⅔, par. 402), enacted in 1965, "declares it to be in the public interest that, in order to avoid duplication of facilities and to minimize disputes between electric suppliers which may result in inconvenience and diminished efficiency in electric service to the public, any 2 or more electric suppliers may contract, subject to the approval of the Illinois Commerce Commission, as to the respective areas in which each supplier is to provide service." Section 7 of the Act provides that in the absence of such a contract and with exceptions not here material "no electric supplier may make an extension of existing lines or construct new lines for the purpose of furnishing service to a customer or premises * * * or furnish service to any customer or premises * * * unless in any such case such electric supplier gives written notice to the electric supplier or suppliers which may be adversely affected by the proposed construction, extension or service. Any electric supplier which claims that

it should be permitted to serve any customer or premises which could be served by such proposed construction, extension or furnishing of service may within 20 days after receipt of such notice or, if no notice is received, not later than 18 months after the completion of such proposed construction, extension or the commencement of service, file its complaint with the Commission which shall proceed to determine the issue  *  *  *."

. A customer is defined by the Act as "any person receiving electricity for any purpose from an electric supplier" (Ill. Rev. Stat. 1967, ch. 111⅔, par. 403.3) and the definition of "person" includes a municipal corporation. (Ill. Rev. Stat. 1967, ch. 111⅔, par. 403.11.) As has been stated, Coles-Moultrie and CIPS are both electric suppliers as defined by the Act.

Coles-Moultrie, in its motion to intervene in the proceeding for a certificate for public convenience and necessity under the Public Utilities Act and in its complaint under the Electric Supplier Act, alleged that the purpose of the proposed transmission line to be constructed by CIPS was to provide wholesale electric power to the village of Bethany. Coles-Moultrie has, however, abandoned efforts to be heard on the issues of the purpose of the proposed transmission line and the right of CIPS to construct it. It did not appeal from the order denying its motion to intervene in the hearing under the Public Utilities Act, and neither the order denying the motion to intervene nor the order granting the certificate of public convenience and necessity to construct this proposed transmission line is now before us. Coles-Moultrie does argue here that: "Certificates of convenience and necessity granted under Section 56 of the Public Utilities Act simply permit the construction of new plants, equipment, or facilities. Section 8 of the Electric Supplier Act controls the right to furnish service to specific premises or customers. The Commission clearly has authority [under already quoted section 7 of the Electric Supplier Act] to

prevent specific service under the latter act, even though the restrained supplier might have a certificate for the general area involved. Thus, it is provided in Section 8 of the Electric Supplier Act that: 'The Commission, however, shall give no weight or consideration to the fact that any supplier has or has not been issued a certificate of public convenience and necessity in the area proposed to be served.' The net effect of the Public Utilities Act and the Electric Supplier Act is that CIPS would have the right under its certificate to construct a tie line from its west Mattoon substation to the Moweaqua area in order to improve service in that area, and yet might not have the right to serve any specific customers along the route of that line."

However, this contention that the Commission may, despite the fact that CIPS has the certificate of public convenience and necessity, determine which supplier may furnish wholesale electric power to "customer or premises" does not consider that the customer here is a municipal corporation. The final sentence in section 14 of the Electric Supplier Act (Ill. Rev. Stat. 1967, ch. 111⅔, par. 414) provides: "Nothing in this Act shall be construed to impair, abridge, or diminish in any way the powers, rights and privileges of incorporated municipalities."

The village of Bethany has authority to operate an electric public utility and to contract for and purchase wholesale electric energy to be used in the operation of its municipal public utility. (Ill. Rev. Stat. 1967, ch. 24, pars. 11—117—1 et seq.) A municipal corporation, prior to the enactment of the Electric Supplier Act, had the right to construct a transmission line at its own expense to a point within or beyond the municipality and purchase its wholesale electric energy at that point from a supplier of its choice. (*Illinois Power Co.* v. *City of Jacksonville,* 18 Ill.2d 618.) The quoted provision of section 14 of the Electric Supplier Act makes it clear that that Act has not taken this right from municipalities.

The Commission is without jurisdiction under the Electric Supplier Act to consider a complaint from an electric supplier who wishes to provide wholesale electric energy to a municipality, when that municipality has decided to construct its own transmission line to a source or supplier of its choice and to purchase the energy from that supplier. Accordingly, the judgment of the circuit court of Moultrie County, affirming the dismissal order of the Commerce Commission, is affirmed.

*Judgment affirmed.*