(No. 35473.—

ILLINOIS POWER COMPANY, Appellant, *vs.* THE CITY OF
JACKSONVILLE *et al.,* Appellees.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

DALLSTREAM, SCHIFF, HARDIN, WAITE & DORSCHEL, of Chicago, and BELLATTI, FAY & BELLATTI, of Jacksonville, (QUERIN P. DORSCHEL, W. R. BELLATTI, W. DONALD McSWEENEY, and JAMES R. MITCHELL, of counsel,) for appellant.

ROBINSON, FOREMAN, RAMMELKAMP, BRADNEY & HALL, and WILLIAM T. WILSON, City Attorney, both of Jacksonville, and I. J. FEUER, Assistant Corporation Counsel, and ROBERT WEINER, City Attorney, both of Springfield, for appellees the City of Springfield and the City of Jacksonville.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and HARRY R. BEGLEY, Special Assistant Attorney General, of Chicago, for *amicus curiae* The Illinois Commerce Commission, and TRAYNOR & HENDRICKS, of Springfield for *amicus curiae* the Illinois Municipal Utilities Association.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The Illinois Power Company commenced this action in the circuit court of Morgan County to enjoin the city of Jacksonville from carrying out a plan for the construc-

tion of a transmission line from Springfield to Jacksonville over which electric power would be transmitted for the use of the municipal utility in Jacksonville. The complaint charged that the power thus transmitted would be used by Jacksonville to supply certain nonresident customers of that utility. The power would be purchased from a municipal utility operated by the city of Springfield.

The Power Company further charged that the Jacksonville utility was engaged in certain extra-territorial operations and that the proposed contract would further expand the extra-territorial aspects of the municipal utility operation. The Illinois Power Company is a public utility and as such is engaged in the business of furnishing electric light and power to Jacksonville and the environs of Morgan County.

The city of Springfield sought and was granted leave to intervene in the proceedings below and filed an answer and further defenses substantially the same as those of the defendant city of Jacksonville.

By its answer Jacksonville admitted the principal factual allegations of the complaint except the allegation that the power to be purchased from Springfield would be used to serve customers outside the corporate limits of Jacksonville. The answer further urged the existence of statutory authorization for the proposed contract and for the ordinances applicable thereto; that the power was needed for the reasonably anticipated needs of the Jacksonville municipal electric system; that the major portion of its electric power was and now is supplied to Jacksonville for its municipal uses and for the inhabitants of the city of Jacksonville.

Further answering an allegation in the complaint that the construction of the proposed transmission line would be the construction of a municipal utility and under the applicable statutory provisions would require a referendum of the voters of the city, the city of Jacksonville asserted that such construction as was proposed would be not the

creation of a new municipal utility but only an extension of an existing utility not requiring a referendum vote.

Other matters were set out as separate defenses in the answers, including a charge of *laches,* estoppel and alleged "unclean hands." The complaint, alleging that Jacksonville was not acting within the orbit of its lawful authority, asserts, basically, the illegality of the ordinances and the proposed contract, and does not charge the city with bad faith, fraud or capricious abuse of its powers.

The circuit court of Morgan County granted a motion of the two municipalities for summary judgment and dismissed the complaint for want of equity. This appeal is from that order and since the validity of a municipal ordinance is involved and the trial court has made the requisite certificates, this court has jurisdiction on direct appeal.

The grant of authority to municipalities to acquire, construct, own and operate any public utility was first contained in an enactment of the legislature in 1913. That enactment authorized the ownership and operation of a public utility "the product or service of which, or a major portion thereof, is or is to be supplied to the city or its inhabitants, * * *." (Laws of 1913, p. 455.) The original language remains substantially unchanged and was re-enacted in 1941 as section 49—1 of the Revised Cities and Villages Act. Ill. Rev. Stat. 1941, chap 24, par. 49—1.

In first considering the granted authority, this court, in *Carr* v. *City of Athens,* 304 Ill. 212, held that the city of Springfield could, by contract, sell the product of its public utility beyond its corporate limits. Thereafter, in the case of *People* v. *City of Chicago,* 349 Ill. 304, it was held that a city was not limited in the acquisition of a public utility to one whose physical properties were located wholly within the corporate limits of such municipality.

In 1955 the legislature amended section 49—1 of the Revised Cities and Villages Act and inserted the phrase, "within the corporate limits of the municipality," so that

the section so far as applicable now reads as follows: "Any municipality has the power (1) to acquire, construct, own, and operate *within the corporate limits of the municipality* any public utility the product or service of which, or a major portion thereof, is or is to be supplied to the municipality or its inhabitants, and to contract for, purchase, and sell to private persons or corporations the product or service of any such utility."

Other language added to the section in 1955 we do not here consider germane since that language obviously relates only to the acquisition of transportation systems by municipalities, a subject with which we are not here concerned.

The Power Company contends that the insertion of the quoted phrase manifests a legislative intention to repudiate the holding in the *City of Athens case* and to restrict municipalities to the confines of their boundaries in the construction and operation of their electric utilities. The contended-for construction would lead to the absurd result that a municipal utility would be limited to its corporate boundaries by one phrase and at the same time be expressly permitted to supply persons outside the corporate limits by the balance of the language.

It is a fundamental rule of statutory construction that this court will presume that the legislature knew of the prior interpretation placed on its language by judicial decision. Further, when the General Assembly amends a statute those portions of the old law which are repeated are regarded not as a new enactment but rather as a continuation of the old law. (*People ex rel. Brenza* v. *Fleetwood,* 413 Ill. 530.) The construction urged by the Power Company would, as we have noted, lead to a finding of restrictions in one phrase and a clear expression of authority conflicting with those restrictions in other phrases of the same statute. We must, in construing a statute, if it can reasonably be done, so construe an enactment as to give effect to each part so that no part is rendered meaningless

or superfluous. See *Peacock* v. *Judges Retirement System*, 10 Ill.2d 498.

Further, section 49—4 of the Revised Cities and Villages Act contains the language that any municipality may sell "within and without" its corporate limits electric energy generated in any electric plant operated by the municipality for its own use. Such authority would be meaningless unless distribution lines were permitted to be constructed within and without the corporate limits. In this connection it should be noted that the statutory provisions of Illinois do not deal in terms of surplus or excess power as has been intimated; rather, the limitation contained in our act is that "a major portion" of the power be supplied to the municipality or its inhabitants. A helpful discussion as to the rules of construction applicable to such limitations is found in 38 Am. Jur., sec. 570.

The authority of a city "to purchase" power has to mean that transmission lines will be used, and we believe it to be self-evident that such transmission lines are not required to be confined within the corporate limits. To so hold would wholly negate the legislative authorization. See also *Shreve* v. *Town of Cicero*, 129 Ill. 226; *Maywood Company* v. *Village of Maywood*, 140 Ill. 216.

Thus we conclude that the contract between the cities of Springfield and Jacksonville by the terms of which, essentially, Jacksonville will construct a transmission line and purchase power from the Springfield municipal utility, is not without the authority of the respective cities. Whether the power thus purchased is to be used in or out of the corporate limits of Jacksonville is immaterial. The one legislative limitation here applicable is that the major portion of the city-owned public utility product be supplied to the municipality or its inhabitants. Thus the issue of fact as between the parties as to the intended use of the purchased power is, as we have said, immaterial since it is nowhere suggested that the extra-territorial operation of

either municipal utility transcends its business within its corporate boundaries.

The existence of a factual dispute between the parties will not necessarily prevent a determination of the case by summary judgment. The disputed fact must be material. Here the one basic fact in dispute is not, and summary judgment was proper. *Allen* v. *Meyer,* 14 Ill.2d 284.

Section 49—3 of the Revised Cities and Villages Act provides that no municipality shall acquire or construct a public utility unless such action is first approved in a referendum vote of the electors of the city. "Public utility" is defined in section 49—2 as including any plant, equipment or property used or to be used "for the production, storage, transmission, sale, delivery, or furnishing  *  *  * power,  *  *  *." It is urged by the Illinois Power Company that the transmission line here to be constructed is a public utility within the language of section 49—2 and 49—3 of the Revised Cities and Villages Act and, therefore, the ordinances relating thereto, even if otherwise legal, must be approved by referendum.

In the case of *City of Springfield* v. *Springfield Consolidated Railway Co.* 296 Ill. 17, substantially the same statutory provisions were under consideration, and it was there held that a proposed street lighting project to be used as a part of the city light plant was not a public utility but rather the extension of an existing utility. In the course of that opinion it was stated: "It would be an unreasonable construction of section 3 to hold that every time the city constructs a new line or purchases some new equipment or appliances to be used in connection with its plant it acquires a new utility, and that every extension, even of a single block, would require an ordinance approved by a vote of the electors. Under this construction, if the city extended the service from its plant it would soon be the owner of numerous public utilities. All the various lines, equipment and property used in connection with the power

house and electric generators of the city constitute but one plant and one utility. We agree with the statement of the appellees in their brief that the city is now operating a single and indivisible plant under the authority and provisions of the Municipal Ownership Act, though since the passage of that act it has acquired additional property which it has merged with its property previously owned. So when the improvement provided for in this ordinance is constructed the city will still own and operate a single, indivisible utility. It was not necessary that the ordinance for the improvement should be submitted to the electors and approved by them."

The Power Company makes the point that the voters of Jacksonville originally by referendum approved the acquisition or construction of the municipal utility at a cost of about $420,000 and that the present program not being submitted to voter approval will cost approximately some $6,000,000. A distinction is sought to be made between major additions or extensions and minor improvements or minor purchases of equipment. Thus it is argued that day-to-day purchases need not be submitted to referendum but that large, unusual purchases or additions must be approved by referendum.

The quoted statutory provisions permit of no such judicial drawing of arbitrary lines. Section 49—3 of the Revised Cities and Villages Act requires a referendum in cases of original acquisition. The question for the voters is one of policy—shall the city go into the public utility business? Having decided, as has the city of Jacksonville, to enter into municipal ownership of a public utility, no policy decisions requiring voter approval are thereafter required by section 49—3. Subsequent policy decisions by the municipal voter are not by the referendum process of section 49—3 but rather by the normal processes of political self-government, with which we are not unfamiliar.

Having concluded that the applicable statutory provi-

sions authorize the enactment of the ordinances here under attack, it becomes unnecessary to pass upon the special defenses urged in the various answers. The decree of the circuit court of Morgan County dismissing the complaint for want of equity was correct and that decree is affirmed.

*Decree affirmed.*