ANGELO RUGGIERO, Plaintiff-Appellee, *v.* MARIO ATTORE, Defendant-Appellant.

First District (4th Division)   No. 62649

Opinion filed July 21, 1977.

Sudak, Grubman, Rosenthal & Feldman, of Chicago (Alan I. Boyer, of counsel), for appellant.

Joseph R. Curcio, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

An *ex parte* order was entered against the defendant, Mario Attore, by the circuit court of Cook County, finding that he had wilfully failed to comply with the court's previous discovery and warning orders, and, as sanctions, the court struck defendant's answer, entered judgment on the issue of liability for the plaintiff, and set the matter for prove-up on damages. Subsequently, an *ex parte* judgment was entered against the defendant for $125,000. Defendant's petition to vacate the order and

judgment pursuant to section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 50(5)) was denied. Defendant appeals the order denying his petition.

The plaintiff, Angelo Ruggiero, an attorney, purchased the defendant's dry cleaning business pursuant to an oral contract for $35,000. Prior to the purchase he had acted as defendant's attorney. On October 22, 1974, he filed a lawsuit alleging that defendant had induced him to make the purchase on the basis of certain material representations as to the quality and volume of the business and that, in fact, these representations were false. Plaintiff prayed for $95,000 as compensatory damages and $100,000 as punitive damages. On November 6, 1974, the original attorney for defendant filed his appearance as attorney of record, but filed no answer or other responsive pleading. Around the same time as the sale of the business, the defendant entered into a contract to sell the building in which the business was located to the plaintiff and another, which also resulted in a lawsuit, pending before Judge Covelli.

Plaintiff's attorney initiated discovery by serving a notice of deposition upon defendant's attorney on November 8, 1974, requiring the appearance of defendant for deposition on January 30, 1975, and further requesting that defendant produce various books, records, and other documents at the deposition. On November 15, 1974, plaintiff's attorney, in accordance with new supreme court rules, requested defendant to produce certain items for inspection or copying within a reasonable time. He sent the request to defendant's attorney. Later, plaintiff's attorney again wrote to defendant's attorney asking him to produce certain documents. On January 24, 1975, pursuant to an acknowledgment letter from defendant's attorney, plaintiff's attorney agreed to defer the discovery requests to a mutually·convenient time. On February 10, 1975, defendant's attorney filed an answer to the complaint.

On February 20, 1975, plaintiff's attorney directed a letter to defendant's attorney stating that he had presented a compliance motion to Judge Jiganti who informed him that he would not enter the order without imposing sanctions or a fine and that an extension of an additional 28 days toward compliance was a private matter between the attorneys. On March 27, a notice of motion was sent to defendant's attorney specifying that plaintiff's attorney would appear before Judge Jiganti on March 31 and would present a motion for sanctions for failure to comply with discovery. Judge Bua heard the motion on that day and found that defendant had failed to comply with plaintiff's discovery requests. He ordered the defendant to deliver to plaintiff's attorney, within 14 days, an authorization permitting plaintiff to obtain a copy of defendant's income tax returns, and further ordered him to appear for a sanction hearing on April 17, 1975. Defendant was not present at the hearing. The

authorization was not delivered by April 14, the deadline for compliance.

The following pertinent facts are alleged in defendant's petition to vacate which is supported by affidavits and supplemental affidavits. Around April 1, 1975, defendant engaged the services of a successor law firm to represent him in both the chancery and law matters. Substitution of attorneys was obtained on April 9 in the suit pending before Judge Covelli, but not in the instant case. On April 15, defendant's original attorney withdrew from the law case and delivered copies of the various pleadings and orders to the successor. The successor attorney first learned of Judge Bua's order on April 16 when he reviewed the copies which had been delivered to him the previous day. He examined the *Law Bulletin* of April 17 and discovered that the hearing was not scheduled. He telephoned plaintiff's attorney and spoke with his clerk, asking him to determine if the hearing would proceed that day. He had intended to file the substitution of attorneys at the scheduled hearing. The clerk returned the call and said that the motion would be rescheduled, and a copy of the notice would be mailed to him. The notice of motion rescheduling the hearing to April 21 was served on defendant's original attorney, and not on the successor.

Defendant's original attorney telephoned plaintiff's attorney and advised that he no longer represented the defendant. He suggested sending a notice of the hearing to the successor. Plaintiff's attorney said he would send a notice to the successor.

In the verified response to the petition, the clerk for plaintiff's attorney denied conversing with the successor attorney, and plaintiff's attorney denied the alleged substance of the conversation with the original attorney on April 17, and particularly denied that he agreed to send future notices to the successor. The successor submitted telephone company records to the court showing two calls on April 17: One call was made from the successor's office to plaintiff's attorney's office; the other call was made shortly thereafter from plaintiff's attorney's office to the successor's office.

On April 21, Judge Bua entered an *ex parte* order against defendant in response to defendant's wilful failure to comply with discovery requests and refusal to comply with the 14-day "warning" compliance order. He struck the defendant's answer, entered judgment on the issue of liability in favor of plaintiff, and awarded attorneys' fees to plaintiff.

On May 22, plaintiff served a notice of motion on defendant's original attorney informing him that plaintiff would appear before Judge Butler and would request assignment of the case for prove-up on May 26. The case was assigned to Judge Canel who, after an *ex parte* hearing on the issue of damages, entered judgment for the plaintiff in the sum of $125,000. Defendant's original attorney denied receiving any notice. In

fact, he attests that the first time notice was given to him or his successor regarding Judge Canel's order was when the defendant informed the successor attorney that various banks and his employer had been served with garnishment summons.

On June 3, the successor served a notice and petition to vacate the judgment upon plaintiff's attorney, requesting him to appear before Judge Bua on June 6. The successor filed his substitution of attorneys on June 6 and presented the petition to Judge Bua. The judge ordered that it be transferred to Judge Canel.

In addition to the facts previously set forth, the petition also alleged that the successor attorney had met with plaintiff and his attorney regarding the chancery matter pending before Judge Covelli on April 9, April 29, April 30, and May 15, and at no time did the plaintiff or his attorney mention the entry of the order by Judge Bua on April 21 in the law action. The successor further alleged that he advised plaintiff's attorney that he represented defendant in the law action and that at the same time, negotiations took place between the parties relating to both matters. The petition also indicated a willingness to authorize the Internal Revenue Service to disclose the defendant's tax returns to the plaintiff.

The plaintiff filed his answer to the petition on June 30. Plaintiff's attorney admits the meetings, but claims he was under no legal duty to inform defendant of the order entered, and specifically denied that negotiations took place relating to the law action. On September 8, Judge Canel denied the petition to vacate his prior judgment of May 26 awarding damages to the plaintiff. He previously had refused to sit in review of Judge Bua's April 21 order.

Defendant appeals from the judgment and order entered by Judge Canel on May 26 and September 8, 1975, respectively, and the order entered by Judge Bua on April 21, 1975.

The issue presented for review is whether the trial court erred when it denied defendant's petition to vacate the default order and judgment entered against him, which petition was filed pursuant to section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 50(5)).

The defendant contends that the trial court abused its discretion when it refused to grant his petition to vacate the default judgment, said petition having been filed 11 days after final judgment was entered. He further argues that even if the court did not abuse its discretion, his petition should have been granted so as to do substantial justice between the parties.

The statute controlling in this case provides:

"The court * * * may on motion filed within 30 days after entry thereof set aside any final order, judgment or decree upon any terms and conditions that shall be reasonable." (Ill. Rev. Stat. 1975, ch. 110, par. 50(5).)

The legislature has directed that this section, as well as all other sections of the Civil Practice Act, be liberally construed. (Ill. Rev. Stat. 1975, ch. 110, par. 4.) In response to these statutes, the courts of Illinois have been liberal in setting aside defaults entered at the same term. *Widicus v. Southwestern Electric Cooperative, Inc.* (1960), 26 Ill. App. 2d 102, 107, 167 N.E.2d 799, 802.

■■ The overriding consideration in determining whether to vacate a default judgment is whether substantial justice will be done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits. (*People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841, 843; *Widicus*, at 108-09.) There is no longer a requirement that the petitioner show a meritorious defense or due diligence in asserting a defense, but the court may consider these factors. (*Hoffman v. Hoffman* (1976), 37 Ill. App. 3d 415, 417, 346 N.E.2d 114, 115.) Finally, in determining whether justice is being done, it is unnecessary for a reviewing court to determine as a matter of law that the trial court exceeded or abused its discretion in denying the petition to set aside a default. *Hoffman*, at 417; *Trojan v. Marquette National Bank* (1967), 88 Ill. App. 2d 428, 438, 232 N.E.2d 160, 166; *Lynch v. Illinois Hospital Services, Inc.* (1963), 38 Ill. App. 2d 470, 476, 187 N.E.2d 330, 332.

The record shows that defendant's original attorney alleged that he telephoned plaintiff's attorney and advised him of the successor's substitution. Next, plaintiff's attorney and the successor were negotiating a settlement of the chancery matter in April and May 1975, and, also, were allegedly negotiating a settlement of this matter. The successor also alleged that the law clerk for plaintiff's attorney had agreed to send him notice of the sanction hearing and that this was not done. Plaintiff's attorney made no attempt to telephone defendant's original attorney or the successor to advise them of the *ex parte* proceedings when no one appeared on behalf of the defendant. Once the successor learned of the default, he was prompt in filing his petition to vacate the same. The substitution of attorneys was not filed until June 6, 1975.

■■ Plaintiff's attorney alleged that he was unaware of the successor's involvement in the law matter. Plaintiff argues that error was committed by the defense and that he should not be penalized for the errors and omissions of defendant's attorneys. It is true that carelessness in responding to the call of cases and failure to file all appropriate pleadings and papers in a timely manner can impede the administration of justice, but, on the other hand, the most diligent lawyer can be confronted, through slight error or confusion on the part of himself or a clerk, with a serious default against his client. (*Wolder v. Wolder* (1961), 30 Ill. App. 2d 98, 101, 173 N.E.2d 546, 548.) The record in this case, however, does not show that a default order was necessary to secure justice for the plaintiff.

In fact, the entry of a default here is too harsh a punishment for the successor's inadvertence in failing to file the substitution of attorneys, in light of the various allegations that plaintiff's attorney had notice that the successor was representing the defendant in the instant case, and in light of the defendant's willingness to authorize the Internal Revenue Service to make available copies of his tax returns to the plaintiff.

■■ On the other hand, the plaintiff's attorney failed to telephone either defendant's original attorney or his successor prior to the entering of the April 21 order or May 26 judgment. It is an established principle that a lawyer's professional responsibility to his client does not require him to disregard professional courtesies to opposing counsel, including adherence to local customary practices designed to assure the doing of substantial justice between the parties. (*Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1020, 329 N.E.2d 376, 380; *George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973, 979, 313 N.E.2d 684, 688-89.) Had plaintiff's attorney telephoned either of defendant's attorneys, this situation might not have resulted. Something more than the morals of a medieval market place may reasonably be expected in the conduct of litigation. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 615, 190 N.E.2d 348, 351; *Jansma Transport, Inc. v. Torino Baking Co.* (1960), 27 Ill. App. 2d 347, 354, 169 N.E.2d 829, 832.) A reasonable degree of professional regard and civility should have compelled counsel for the plaintiff to have communicated frankly and openly with successor counsel for defendant as to the state of the matter before Judge Canel. This is especially so when counsel for plaintiff met with counsel for defendant before Judge Covelli on April 29, April 30, and again on May 15. Also, we are mindful of the fact that plaintiff formerly served as defendant's attorney. The law watches with particular care, and subjects to the closest scrutiny, all transactions between an attorney and his client during, or growing out of, their relationship. 4 Ill. L. & Prac. *Attorneys and Counselors* §105 (1971).

Viewing all of the circumstances, we must conclude that in order to see substantial justice done, the order of September 8 is reversed, the May 26 judgment and April 21 order are vacated, and the defendant is to be given his day in court. The ends of justice dictate this result.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

ROMITI and LINN, JJ., concur.