THE PEOPLE *ex rel.* THOMAS DIFANIS, State's Attorney of Champaign County, Plaintiff-Appellee, *v.* LEONARD FUTIA *et al.*, Defendants-Appellants.—(THE VILLAGE OF THOMASBORO, *Amicus Curiae.*)

Fourth District   No. 14566

Opinion filed February 7, 1978.

Charles C. Hall, of Young, Welsch, Young & Hall, of Danville, for appellants.

Thomas J. Difanis, State's Attorney, of Urbana (Joseph D. Pavia, Assistant State's Attorney, of counsel), for appellee.

Webber, Balbach & Thies, P.C. of Urbana, for *amicus curiae*.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:
"* * * the task of trying to define what may be indefinable. * * * hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it * * *." —Mr. Justice Stewart, concurring, *Jacobellis v. Ohio* (1964), 378 U.S. 184, 197, 12 L. Ed. 2d 793, 803-804, 84 S. Ct. 1676.

A seemy matter—the libidinous, the salacious.

Yet as vapid and offensive as the subject matter before us may be, we are required to reverse.

The Illinois public nuisance act (Ill. Rev. Stat. 1975, ch. 100½, pars. 1—11) is the statutory focus of this opinion. Defendants timely appealed the trial court's entry of a default judgment and its refusal to vacate same. This court granted defendants' motion for a stay pending appeal and also granted the Village of Thomasboro's *amicus* petition. Defendants contend (1) that a decision by Judge Harold Jensen dissolving the temporary injunction entered under the act amounted to a dismissal of the action; (2) that Judge Robert Steigmann abused his discretion in striking defendants' answer and entering a default judgment; and (3) that Judge Steigmann further abused his discretion in failing to vacate the default judgment.

We agree; all three issues raised by defendants compel reversal. A thorough chronological recitation of events is necessary due to the pervasiveness of error which occurred.

The Illinois public nuisance act was enacted by our legislature in 1915. Section 1 states that all buildings "used for the purposes of lewdness, assignation, or prostitution" are declared to be public nuisances and may be abated as provided in the statute. Remedies include perpetual injunctions from maintaining or permitting any such nuisance within the court's jurisdiction, enjoining use of the building involved for any purpose for one year, and forfeiture of fixtures from the building. (Ill. Rev. Stat. 1975, ch. 100½, par. 5.) On June 7, 1977, pursuant to the public nuisance act (and a Thomasboro ordinance identical to the act except for the ordinance's inclusion of "masturbatory massage parlor" in its definition of a public nuisance), the Champaign County State's Attorney filed a verified complaint with exhibits charging that two business establishments operated by defendants in the village of Thomasboro were public nuisances. On the same day, Judge Jensen entered a "temporary writ of injunction" as provided in section 2 of the act (Ill. Rev. Stat. 1975, ch. 100½, par. 2).[1]

---

[1] Since the statute refers to the pretrial injunction as a "temporary writ of injunction," we shall refer to it as such. But see *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 368 N.E.2d 990, regarding nomenclature of injunctions in Illinois.

On June 17, 1977, defendants filed a motion to dissolve the temporary injunction; among the grounds stated was that the complaint failed to state a cause of action. The verified complaint alleged both the L & L Theatre and the Fantasy Photo Studio to be public nuisances. Newspaper ads held out the theatre as an "adult peep show" with live entertainment; a tape recording activated by calling a number listed in the ad described the theatre as "something new and fascinating to excite your wildest imagination." Newspaper ads for the photo studio noted "special props" were available to patrons taking pictures of live models and that the studio specialized in "bondage photography." A taped telephone ad stated young ladies would pose for patrons in private studios either in exotic clothing or nude; the studios were designed to let the customer's "imagination run wild." Paragraph 18 further alleged that females interviewed for employment were told that, once the "heat" was off, they would be allowed to masturbate customers and, later on, to have intercourse with customers. After extensive argument by counsel, the court addressed the question of whether the allegations of the complaint (taken by defendants as true for the purposes of the motion) showed that a nuisance (as defined by the act) existed. Regarding the allegations of occurrences after the "heat" was off, Judge Jensen stated that the complaint established that such acts were in the future and speculative and that the State could not proceed to enjoin something which might occur in the future.

The court then turned its inquiry to present activities allegedly occurring. The focus was on the definition of "lewdness" in the act. The court stated:

> "In view of *Goldman*, which says what lewdness must mean, we know that [a pornographic bookstore] isn't and masturbatory massage parlors are. The question then, is, do the activities which we may reasonably conclude go on there rise to the level of lewdness as defined by *Goldman*, and though my personal definition might be otherwise, I think the language of *Goldman* leads me *to a holding that this injunction could not stand* and accordingly on that basis I'm going to allow the motion to dissolve the injunction * * *." (Emphasis added.)

The State's Attorney did not seek review of Judge Jensen's decision. Defendants filed their answer to the complaint prior to the hearing on the motion to dismiss.

On or about July 5, 1977, plaintiff sent written interrogatories (73 in number) to each defendant and copies to defense attorney Leff. The defendants never received the interrogatories since the mail was addressed to the Thomasboro business address and there is no general delivery in Thomasboro; and proper mailing addresses of the businesses were in Urbana. After a short time, the interrogatories were returned

unclaimed. Mr. Leff received the interrogatories on July 8 and ignored them, based on his view of the legal effect of the June 24 order. On July 20, 1977, the State moved to strike defendants' answer and prayed the trial court enter a default judgment, since answers to the interrogatories had not been filed within 10 days of receipt as provided in section 4 of the act. On July 25, 1977, the motion was heard before Judge Steigmann.

## I.

Defense counsel Hall argues that the court should not have even heard the motion since—as a matter of law—Judge Jensen's earlier order dissolving the temporary injunction amounted to a dismissal of the complaint; therefore, serving interrogatories would be a useless act. The State rejoins that defendants' position is not supported by presently viable law and defendants have waived the argument and are estopped from asserting the issue since defendants had not previously moved to dismiss the complaint. The State maintains the correctness of the trial court's July 26, 1977, written order finding the defendants' legal argument unmeritorious and that defendants should have earlier moved for dismissal if they believed the earlier order was tantamount to a judgment on the merits. *Amicus* argues that if defendants are correct on the law, this court, in effect, would be denying the plaintiff's right to appeal the June 24 order.

■■■ The appellate court in *Clayton v. Hubbard* (1962), 33 Ill. App. 2d 439, 179 N.E.2d 845, restated the long-standing rule that when the only relief sought by a complaint (in equity) is an injunction, an order dissolving the injunction for want of equity apparent on the face of the complaint is, in effect, an order denying all relief and is a final disposition of the case. (See also *Goddard v. Chicago & Northwestern R.R. Co.* (1903), 202 Ill. 362, 365, 66 N.E. 1066; *Titus v. Mabee* (1851), 25 Ill. 232.) Judge Jensen held "this injunction could not stand" since the acts complained of presently occurring were not "lewdness, assignation, or prostitution" under this court's decision in *People v. Goldman*(1972), 7 Ill. App. 3d 253, 287 N.E.2d 177. The complaint sought the injunctive relief provided in the statute and abatement orders pertaining thereto. Practice and procedure under the public nuisance act is not intended to be different from procedure followed in other chancery cases. (*People ex rel. Thrasher v. Eisenberg* (1916), 202 Ill. App. 63.) Under *Clayton, Goddard,* and *Titus*, the order dissolving the temporary injunction for failure to allege a public nuisance, as defined by case law, amounted to an order denying all relief and was a final disposition of the case.

■■ Consequently, this action ended on June 24, 1977. In so ruling, we do not, and have not, denied the State an opportunity to appeal. Assuming, *arguendo*, the June 24, 1977, order was not final, it was

nonetheless an appealable order under Supreme Court Rule 307(a)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 307(a)(1)). There was no appeal taken. The State cannot now complain that Judge Jensen's determination was erroneous.

■■ Defense counsel's attempt below to argue that the case had been terminated by the June order fell on deaf ears. Judge Steigmann stated:

"I don't know what evidence was presented at [the first hearing]. It's not before me. If any was presented. I don't know what portions of the injunction temporarily issued by Judge Jensen he felt were no longer sound, or his precise reasons for doing it. But as I indicated, I think it's beyond the purview of the Court to have to speculate. Accordingly I am not willing to accept the argument of the defendants that the complaint is without substance * * *."

The trial judge erred when he did not attempt to determine the nature and effect of the earlier ruling (as distinguished from a judicial review of the evidence before Judge Jensen). Such inquiry should have been made.

■■■ The State's waiver argument is based on the Civil Practice Act, section 45 (Ill. Rev. Stat. 1975, ch. 110, par. 45) which states in part, "[a]ll objections to the pleadings shall be raised by motion" and the lack here of such a motion by defendants. The practice notes to section 45 recognize that objections to the sufficiency of the complaint may be made for the first time on appeal if the complaint wholly and absolutely fails to state a cause of action, citing *Lasko v. Meier* (1946), 394 Ill. 71, 67 N.E.2d 162. The defect of a complaint's failure to state a cause of action cannot be waived by defendants. (*In re Rauch* (1977), 45 Ill. App. 3d 784, 359 N.E.2d 894.) If it appears as a matter of law that a complaint fails to state a cause of action, an objection may be made to it *at any time by any means*. (*Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 280 N.E.2d 552.) Thus, the following is apparent: Defendants could raise the sufficiency of the complaint based on Judge Jensen's earlier order in opposition to the plaintiff's motion to strike (*Psyhogios*) and the failure to earlier move for dismissal is not a waiver of that argument. (*Rauch*.) The State's argument that remarks of defense counsel Leff on June 24 amounted to an estoppel to later assert Judge Jensen's ruling is unmeritorious. His calculated remark ("* * * I'll respond however I feel is proper to respond") admits nothing except that defense counsel would respond as he saw fit to whatever the plaintiff did next. A "right" to file a document is one matter; its legal effect may be vastly different.

■■ The unappealed June 24 order is "law of the case" against the plaintiffs and—on that ground alone—we could dispose of the plaintiff's now untimely argument that the complaint did, in fact, state a cause of action under the act. However, it is proper to address the issue. Plaintiff

and *amicus* argue that since paragraph 18 of the complaint alleges acts occurring in the future which would render the businesses a public nuisance *per se* under the act, the anticipated nuisance may be enjoined. *Amicus* continues that the act's ambit covers business activities which "precurse inevitable" acts of prostitution and masturbatory massage.

■■■ The general rule is that while an injunction will be granted only to restrain an actual, existing nuisance, a court of equity may enjoin a threatened or anticipated nuisance where it clearly appears that a nuisance will necessarily result from a contemplated act or thing which is sought to enjoin. (*Fink v. Board of Trustees* (1966), 71 Ill. App. 2d 276, 218 N.E.2d 240.) No reported case under the public nuisance act reveals that relief was granted based on anticipated, rather than present, acts of prostitution or masturbatory massage. The proximity of customers and female employees at a "peep show" and a nude photo studio and the commission of prohibited acts sometime *in futuro* when the "heat" is off does not, of itself, afford a basis for anticipatory relief under the act. The building may not be declared a nuisance until it has been "*used*" for the prohibited acts. Paragraph 18 does not state a cause of action under the act since the conduct alleged to occur will be at a completely undetermined future time. (*Fink.*) And equity will not enjoin a future criminal violation. (*Goldman.*) Judge Jensen's finding on this point was correct.

Do the business activities alleged to be presently occurring "precurse inevitable" acts of prostitution? We feel not. Proximity and possibility are not enough under the act. The "inevitability" of proscribed conduct in this case is of no greater degree than with the "swinger's club" in *Goldman*.

The question then becomes whether, as a matter of law, the alleged acts *presently occurring* at the establishments consist of "lewdness, assignation or prostitution"; a public nuisance is defined by those terms since this action was brought under the act (and the very similar ordinance) rather than under a common-law theory (compare *Village of Bensenville v. Botu, Inc.* (1976), 39 Ill. App. 3d 634, 350 N.E.2d 239). *Goldman* held that a pornographic bookstore and a swinger's club could not be enjoined under the act. We note that the Illinois Supreme Court denied leave to appeal in *Goldman*. The legislature has not amended those portions of the act defining a public nuisance after the above decisions. Inaction by the legislature following a judicial construction presumptively indicates that the construction was in accord with the intent. (*Barthel v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 816, 371 N.E.2d 311; see also *Illinois Power Co. v. City of Jacksonville* (1960), 18 Ill. 2d 618, 165 N.E.2d 300.) The State does not challenge Mr. Justice Sam Smith's definition in *Goldman* of "lewdness" as meaning acts of prostitution.

■■ We agree with the trial court that, while our personal definition might be otherwise, a "peep show" and nude photo studios are not enjoinable under the act as buildings which are "used for the purposes of lewdness, assignation, or prostitution" (*Goldman*). Judge Jensen had a hard decision to make; that decision, though perhaps publicly unpopular, was absolutely correct. The instant complaint does not state a cause of action under the act upon which relief could be based. (*Goldman.*) Naturally, if an act of prostitution does occur, the result will be different.

In sum, the order dissolving the temporary injunction was proper; the complaint fails to state a cause of action under the act. The order dissolving the temporary injunction amounted to a dismissal of the action since only statutory injunctive relief was sought. The State failed to appeal that order within 30 days and is bound by it. The trial court erred when it did not inquire into the basis of Judge Jensen's ruling and it also erred in determining defendants had waived the issue or were estopped from so arguing. The court should have dismissed the complaint and struck the cause from the docket.

## II.

Even if we were not compelled to reverse on the first issue raised by defendants, the trial court abused its discretion and committed reversible error in striking defendant's answer and entering a default order of July 26, 1977.

Accepting, *arguendo*, Judge Steigmann's determination that section 4 of the act preempted the Supreme Court rules on written interrogatories and sanctions for noncompliance (compare *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602, with section 1 of the Civil Practice Act, section 1 of the Supreme Court Rules, and *Wintersteen v. National Cooperage* (1935), 361 Ill. 95, 197 N.E. 578), the sanctions imposed were excessive. Counsel Hall explained why attorney Leff had not answered the interrogatories, that defendants had no personal knowledge of the interrogatories' existence before the motion to strike was filed, and that defendants would abide by a court decision that the interrogatories be filed forthwith. Any "fault" lay with the acts or omissions of counsel and not the defendants. (See *Conover v. Smith* (1974), 20 Ill. App. 3d 258, 314 N.E.2d 638; compare *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460, (fault not on counsel, but on party).) As a panel of this court stated in *Department of Transportation v. Mainline Center, Inc.* (1976), 38 Ill. App. 3d 538, 347 N.E.2d 837, discovery sanctions which dispose of litigation should be sanctions of last resort, when the uncooperative *party* demonstrates a deliberate contumacious or unwarranted disregard of the court's authority. The purpose of the imposition of sanctions should be to

promote the goal of discovery and not to punish the offending party. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6.) On the facts before us, the sanction imposed was punishment against the defendants for acts of one of their counsel and was a gross abuse of discretion.

The trial judge treated the sanctions enumerated in section 4 as limiting his available options. This also was error. It is a long-standing rule that, absent legislative grant, a trial court has no power to enter a judgment for failure to obey discovery procedures. (*Boettcher v. Howard Engraving Co.* (1945), 389 Ill. 75, 58 N.E.2d 866 (interrogatories); *People ex rel. General Motors v. Bua; Walter Cabinet Co. v. Russell* (1911), 250 Ill. 416, 95 N.E. 462.) No direct counterpart to section 3 of the Civil Practice Act, or the sanctions present in Supreme Court Rule 219, existed in 1915. In the face of the 1911 decision by our supreme court in *Walter Cabinet Co.*, the legislature, in order to ensure that a trial court applying the public nuisance act would be empowered to handle recalcitrant defendants with a panoply of available sanctions, enacted the necessary grant of power so that default was an option. The enumerated sanctions of section 4 were not meant to limit discretion, but rather to enhance it; it was, if you will, a 1915 precurser to the present Supreme Court Rule 219 for use in enforcing the act. The purpose of the sanctions of section 4 is to promote discovery, not to preempt trial on the merits.

Again to summarize, we were not asked to address the continued validity of the discovery and sanction procedures of the public nuisance act under *Jackson.* The trial court's determination of the available options open to him was error since the determination placed undue emphasis on the enumerated sanction of default. Finally, the entry of a default judgment was a reversible abuse of discretion since it (1) punished the defendants for the acts of counsel; (2) was improper in light of defendants' offer to promptly answer the interrogatories; and (3) was fundamentally unfair in light of the earlier order which, at least, should have cast doubt on the complaint's continued vitality. The court took the easy road—and erred.

### III.

On August 1, 1977, defendant Futia filed his answers to his 73 interrogatories. Defendant Ross filed answers on August 9. The answers of both defendants contained around 10 objections to materiality and relevance. On August 9, 1977, defendants timely filed a motion to vacate the decree and set aside the default judgment. On August 12, the hearing before Judge Steigmann was held. After argument, the court changed its July 26 finding that the individual defendants had wilfully failed to answer the interrogatories. The court also changed an earlier finding of

neglect against Attorney Leff to one of wilful failure to answer the interrogatories. The court again refused to address defense arguments on the effect of the June 24 order. The court had no "pause or hesitation" in denying the motion to vacate.

Despite *amicus'* argument to the contrary, the motion to vacate below was governed by section 50(5) of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 50(5); see *Wintersteen; Civil Practice Act,* section 1.) Our supreme court, in *People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 220 N.E.2d 841, stated that under section 50(5), the overriding consideration before the trial court is whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the nonmoving party to go to trial on the merits. In *Patrick v. Burgess-Norton Manufacturing Co.* (1976), 63 Ill. 2d 524, 349 N.E.2d 52, the court reaffirmed the *Reid* test and went a step further: A majority of the court agreed that, on review, reversal of a trial court's denial to vacate a default judgment did not require a finding that the trial court abused its discretion. See also the excellent summary in *Columbus Savings & Loan Association v. Century Title Co.* (1977), 45 Ill. App. 3d 550, 359 N.E.2d 1151.

Even though we need not find an abuse of discretion to reverse the court's decision, it is evident abuse occurred. The answers to interrogatories had been voluntarily filed. The trial court was forced by the facts to find fault only with the attorney, yet he upheld punishment visited on the defendants. The June 24 order was a continuing cloud upon the complaint's validity. In light of the severe penalties provided in the act, the interests of substantial justice compelled a hearing on the merits. It was clearly not unreasonable under the circumstances to have the State proceed to trial. (*Reid; Patrick.*) *Amicus'* arguments against the reasonableness of having a trial on the merits are incredible; if true, plaintiffs do not have admissible evidence to prove the allegations of the complaint. In addition, it would be wrong for this court to uphold a default judgment where it appears the complaint fails to state a cause of action. *Roe v. County of Cook* (1934), 358 Ill. 568, 193 N.E. 472.

Certain gratuitous trial court comments regarding the good faith of the interrogatory answers on file were totally improper since the record reveals no previous question or hearing on the substance of the answers. Since section 4 provides that written interrogatories concern "matters material to the allegations of the complaint," it logically follows that immaterial (and irrelevant) interrogatories may be proper subjects of objection; the State's argument to the contrary is unpersuasive. If the July 26, 1977, order was somehow viable, the court erred and abused its discretion in refusing to vacate the default. Under the facts herein, the interests of substantial justice compel this default be overturned. As a

930

separate ground, under *Roe*, we would reverse the decision not to vacate since the complaint fails to state a cause of action under the act.

## IV.

To recapitulate, the case ended when the motion to dissolve the temporary injunction was granted. Therefore, we reverse the trial court's entry of a default judgment and its refusal thereafter on motion to vacate the default judgment. Furthermore, we have determined the complaint fails to state a cause of action under the act and should be dismissed with prejudice. Upon remand, the trial court is hereby directed to do so.

Reversed and remanded with directions.

CRAVEN and TRAPP, JJ., concur.