DAVID KENT DALTON, Plaintiff-Appellee, *v.* RAY C. BLANFORD *et al.*, d/b/a Stoutenborough Auction Co., Defendants-Appellees.—(LOTTEO BALACO, Defendant and Third-Party Plaintiff-Appellee, *v.* ROY WICKHAM, Third-Party Defendant-Appellant.)

Fifth District   No. 77-523

Opinion filed December 14, 1978.

92

Miley & Meyer, of Taylorville (William J. Meyer, Jr., and Daniel W. Austin, of counsel), for appellant.

Jerome Mirza and Associates, Ltd., of Bloomington (David V. Dorris, of counsel), for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Third-party defendant Roy Wickham appeals from an order of the circuit court of Christian County denying his motion to set aside a default judgment entered against him in the amount of $75,000.

Wickham, a resident of Oklahoma, contends that he was not subject to the jurisdiction of the courts of Illinois. We hold against Wickham on this issue. Alternatively, Wickham contends that assuming the courts of Illinois did have jurisdiction over him, the trial court erred in denying his motion to set aside the default judgment against him which was filed pursuant to section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 50(5). We hold in favor of him on this issue.

On June 12, 1970, plaintiff David Dalton filed suit against Ray C. Blanford, Patricia Blanford and Lotteo Balaco seeking damages for injuries received in a fall from a horse on April 25, 1969. The alleged cause of the fall was a defective saddle which Dalton had purchased at co-defendant Blanford's auction barn in Springfield, Illinois. On the day of that purchase co-defendant Balaco sold some saddles at the auction barn. These saddles were allegedly acquired by him in Oklahoma from appellant third-party defendant Wickham. On July 1, 1971, Balaco filed a third-party complaint against Wickham seeking indemnification for any

judgment which might be entered against him, plus reasonable attorney's fees and court costs. On July 8, 1971, Wickham was served with a summons and a copy of the complaint at his residence in Oklahoma. Wickham did not answer the complaint nor enter his appearance, although in an affidavit later submitted to the circuit court Wickham stated he had retained the services of a law firm in Taylorville, Illinois, to represent him in this proceeding.

On December 28, 1976, a default judgment was entered against Wickham on motion of Balaco. However, at the same time permission was granted to submit an order making findings of fact. This order was not signed by the judge and filed until January 19, 1977, nunc pro tunc as of December 28, 1976. On the same day another order was signed and filed holding Wickham liable for judgment in the amount of $75,000 entered against Balaco in the suit filed by Dalton. Previously on December 28, a judgment of $75,000 and costs had been entered against the Blanfords and Balaco as co-defendants after a jury verdict in that amount.

On January 26, 1977, Wickham was sent a copy of the two orders pertaining to him. He then retained his present counsel and on February 15, 1977, filed a motion to set aside the default judgment. Plaintiff Dalton and third-party plaintiff Balaco each filed motions to strike Wickham's motion, which the trial court granted.

Did the trial court have jurisdiction of Wickham? A court's authority to exercise jurisdiction over a nonresident defendant arises from section 17 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 17) which provides in part:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent, does any of the acts hereinafter enumerated, thereby submits such person * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State;
* * *

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this Section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State."

It has been repeatedly stated that the purpose of section 17 is to exert in personam jurisdiction over nonresidents to the extent permitted under the due process clause of the fourteenth amendment to the United States Constitution. (*Nelson v. Miller*, 11 Ill. 2d 378, 143 N.E.2d 673;

*Koplin v. Thomas, Haab & Botts*, 73 Ill. App. 2d 242, 219 N.E.2d 646; *O'Hare International Bank v. Hampton*, 437 F.2d 1173 (7th Cir. 1971); *Lima v. Disney World, Inc.*, 47 Ill. App. 3d 658, 365 N.E.2d 89.) The cases of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, and *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 235, combine to set forth the due process limitations. The basic test was enunciated in *International Shoe*:

> "[D]ue process requires only that in order to subject a defendant to a judgment in *personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.)

No mechanical test or rule of thumb can be used to determine whether sufficient contacts exist to allow a state to claim in personam jurisdiction over a nonresident defendant. Instead, each case must be assessed on its particular facts and circumstances. (*Stansell v. International Fellowship, Inc.*, 22 Ill. App. 3d 959, 318 N.E.2d 149, 150-51; *Hutter Northern Trust v. Door County Chamber of Commerce*, 403 F.2d 481, 484 (7th Cir. 1968).) "The determination must be made according to what is fair and reasonable in the particular situation before the court." *Lima v. Disney World, Inc.*, 47 Ill. App. 3d 658, 660.

One factor is "whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." (*Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 440, 176 N.E.2d 761; see also *Koplin v. Thomas, Haab & Botts*, 73 Ill. App. 2d 242, 219 N.E.2d 646; *Lima v. Disney World, Inc.*, 47 Ill. App. 3d 658, 365 N.E.2d 89.) Engaging in commercial activities within the state has been held to be such an act. (*Gray v. American Radiator & Standard Sanitary Corp.*; *Bolf v. Wise*, 119 Ill. App. 2d 203, 255 N.E.2d 511.) Persons conducting commercial activities outside the state have been held to have invoked the benefits of the Illinois law even though the execution of the contract formally occurred outside of Illinois' borders, was not to be performed in Illinois, and was to be governed by the law of another state. *Scovill Manufacturing Co. v. Dateline Electric Co.*, 461 F.2d 897 (7th Cir. 1972); *Morton v. Environmental Land Systems, Ltd.*, 55 Ill. App. 3d 369, 370 N.E.2d 1106.

Was Wickham subject to the jurisdiction of the courts of this State under the rationale of the above cases? The default judgment order entered January 19, 1977, found Wickham to have transacted business in this State on at least two prior occasions, particularly the sale of saddles and horse related equipment. Jurisdiction over Wickham was thus premised upon section 17(1)(a) of the Civil Practice Act. The record of

the hearing on the motion for default judgment indicates that Wickham had been at the auction barn in Springfield on several occasions. While these statements were made by Balaco whose interest in seeing jurisdiction exerted over Wickham is evident, a cancelled check issued by Blanford payable to Wickham was also admitted into evidence. Blanford identified the check as one issued to Wickham in Springfield on May 5, 1968, in payment for saddles sold at his auction barn. Moreover, Wickham's affidavit which accompanied his motion to set aside the default judgment is devoid of any statement to the contrary. In addition, appellant argues in his brief that he "was an individual who simply purchased and sold saddles occasionally. All the sales were isolated instances." This admits prior sales of saddles. Appellant theorizes that even though there had been prior sales, each sale was an isolated instance with none being sufficient to provide a basis for jurisdiction. As disclosed in the record of the hearing held on the motion for a default judgment, the auction barn had been in operation for only six to seven months when these prior sales of saddles occurred. Though these sales may have been detached and separate, their occurrence within such a short time period at the same business location and involving similar merchandise indicates related acts with one general purpose so that none can be considered an isolated transaction. Under the facts and circumstances as stated above, it was fair and reasonable to conclude Wickham had transacted business in Illinois and therefore submitted to the jurisdiction of the courts of this State as provided in section 17(1)(a) of the Civil Practice Act.

■■ However, section 17(3) of the Act sets a limitation on the extent to which a person will be held to have submitted to State court jurisdiction. It provides as follows:

> "Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section." (Ill. Rev. Stat. 1975, ch. 110, par. 17(3).)

In *Chicago Silver Exchange v. United Refinery, Inc.*, 394 F. Supp. 1332, 1335 (N.D. Ill. 1975), the court held that section 17 "clearly requires that the activities which are relied on to sustain jurisdiction must give rise to the suit in question, at least in part * * *." Similar language was used by the court in *Koplin v. Thomas, Haab & Botts*, 73 Ill. App. 2d 242, 219 N.E.2d 646, which held that the purpose of section 17(3) is

> "* * * to insure that there is a close relationship between a non-resident defendant's jurisdictional activities and the cause of action against which he must defend. * * * [T]he statutory phrase 'arising from' requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the

defendant submitted to the jurisdiction of the Illinois courts." (73 Ill. App. 2d 242, 252-53.)

See also *Tankersley v. Albright*, 374 F. Supp. 530, 534 (N.D. Ill. 1973), and *Morton v. Environmental Land Systems, Ltd.*, 55 Ill. App. 3d 369, 370 N.E.2d 1106.

"Where the jurisdictional activities consist of the solicitation of sales, a cause of action arising from the consequences of such a sale comes within the statutory definition of section 17(3). *Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 219 N.E.2d 646." *Morton v. Environmental Land Systems, Ltd.*, 55 Ill. App. 3d 369, 373.

■■■ We believe the cause of action arising from the sale of saddles by Wickham to Balaco in Oklahoma is closely related to Wickham's jurisdictional activities, that is, the solicitation of sales of saddles. The record suggests that the relationship existed between Wickham and Balaco whereby they took turns selling saddles at the sales barn. No denial of this relationship has been made by appellant. Balaco's receipt of saddles in Oklahoma would be a natural incident of such a relationship. Further, the saddles sold to Balaco in Oklahoma were sent to the same auction barn in Illinois where Wickham had conducted his jurisdictional activities. Wickham denied having known the saddles would be resold in Illinois. However, this does not carry great weight in the decision of this cause. The concepts of fairness and due process do not allow a seller "to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his goods." (*Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir. 1975).) Accordingly, we hold that a sufficient nexus between Wickham's jurisdictional activities and the cause of action exists so that the section 17(3) limitation is inapplicable. Wickham was properly subject to the jurisdiction of the court for the purposes of this cause of action.

Having concluded that the court had jurisdiction over third-party defendant, we are now faced with the question of whether the default judgment should have been set aside pursuant to section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 50(5)), which provides:

"The court may in its discretion, before final order, judgment or decree, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order, judgment or decree upon any terms and conditions that shall be reasonable."

■■ Under section 50(5) of the Civil Practice Act it

"* * * is no longer necessary that such relief be sought on the precise grounds that there is a meritorious defense and a reasonable excuse for not having timely asserted such defense. The

overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits. [Citations.]" (*People ex rel. Reid v. Adkins*, 48 Ill. 2d 402, 406.)

See also *Adams v. Grace*, 128 Ill. App. 2d 69, 262 N.E.2d 489.

Was Wickham's petition filed within 30 days of the default order? The common law record discloses that on December 28, 1976, the trial court entered an order of default against third-party defendant Wickham. After the judge read the above entry at the hearing on the motion, he inquired whether Balaco's attorney had prepared a written order to submit to the court. Balaco's attorney had not and instead requested permission to submit an order making a specific finding of facts. The court instructed Balaco's attorney to prepare such an order and to allow the attorneys for Dalton and the Blanfords to look at it. It is clear that the trial court wanted the parties present at the hearing to agree on what was actually contained in the order before it was officially received into the records of the court. Surely the court retained the power to reject anything in the written order which it deemed improper. This is logically inferred from the fact that the trial court did not actually sign and have filed its judgment order holding Wickham liable for Balaco's share of the judgment until January 19, 1977. This was the same day the trial court signed and filed the submitted written order for default against Wickham. Had the trial court considered the December 28, 1976, entry in the common law record a final order, it could have signed and filed on that same day the judgment order holding Wickham liable for Balaco's share of the judgment entered in favor of Dalton as the principal. (*Cf. W. B. Cohan Corp. v. City Properties Corp.*, 49 Ill. App. 3d 300, 364 N.E.2d 303.) Nevertheless, when the written order was finally submitted to the court on January 19, 1977, the trial court made it effective nunc pro tunc December 28, 1976.

*Grissom v. Buckley-Loda Community Unit School District No. 8*, 11 Ill. App. 3d 55, 296 N.E.2d 624, *appeal denied*, 54 Ill. 2d 592, is analogous to this cause. On July 31, 1972, the attorney for the plaintiff in *Grissom* asked if the trial court wanted a written order submitted. The court then requested the attorney to submit such an order. As noted by the appellate court in *Grissom*:

"Supreme Court Rule 272 (Ill. Rev. Stat. 1969, ch. 110A, par. 272) provides in pertinent part: 'If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect *and the judgment becomes final only when the signed*

*judgment is filed.'* " (Emphasis in original.) (11 Ill. App. 3d 55, 58.)

On August 4, 1972, the attorney for Grissom submitted a written order. The actual order recited that the judgment was entered July 31, 1972, and signed August 4, 1972, nunc pro tunc. In a subsequent opinion, the appellate court ruled defendant's notice of appeal was prematurely filed and plaintiff's cross-appeal not timely filed. The appellate court held that "[t]he trial judge had no authority on August 4, 1972, * * * to enter the money judgment as of July 31, 1972." (11 Ill. App. 3d 55, 58.) The court explained:

> "[T]he trial judge on August 4, 1972, was not supplying an omission, he was not entering an order actually made but omitted from the record, he was not correcting a clerical misprision. He was simply signing a written judgment order which he had earlier ordered to be prepared and presented, and which became final and effective on the date that he signed it." (11 Ill. App. 3d 55, 59.)

In this case the trial court asked Balaco's attorney if he had a written order. Balaco's attorney responded no, but requested permission to prepare such an order making certain findings of fact. Thereupon the court ordered the attorney to prepare a written order and then present it to the other attorneys. This order was submitted, signed by the trial judge effective nunc pro tunc December 28, 1976, and filed on January 19, 1977. Following the analysis of the *Grissom* case, this sequence of events demonstrates that the effective date of the default order in the present case was January 19, 1977.

■■ On February 1, 1977, Wickham received a copy of the default order, and the January 19, 1977, judgment order holding Wickham liable for Balaco's share of the judgment for Dalton in the principal case. Fourteen days later Wickham filed a motion to set aside the default judgment. This motion was clearly within the 30-day time period contained in section 50(5). Thus it is under that section that we determine whether the default judgment should have been set aside.

Wickham asserts that the trial court abused its discretion in failing to set aside the default. However, the Illinois Supreme Court in *Patrick v. Burgess-Norton Manufacturing Co.*, 63 Ill. 2d 524, 531, 349 N.E.2d 52, 56, held that "reversal of the judgment did not require that the circuit court have abused its discretion." (See also *People ex rel. Difanis v. Futia*, 56 Ill. App. 3d 920, 373 N.E.2d 530; *Ruggiero v. Attore*, 51 Ill. App. 3d 139, 366 N.E.2d 470; *Hoffman v. Hoffman*, 37 Ill. App. 3d 415, 346 N.E.2d 114.) Citing from *People ex rel. Reid v. Adkins*, 48 Ill. 2d 402, 270 N.E.2d 841, the supreme court in *Patrick* reaffirmed that " '[t]he overriding

consideration now is whether or not substantial prejudice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits.'" 63 Ill. 2d 524, 531-32.

Other appellate courts have been faced with the determination of whether the setting aside or refusal to set aside a default judgment was proper. Several factors relevant to the determination of whether substantial justice is being done between the parties emerge from these cases. As previously noted, in a section 50(5) motion it is no longer necessary to show the existence of a meritorious defense and a reasonable excuse for not having asserted that defense. "[B]ut these are factors in determining whether the judgment should or should not be vacated in order to do substantial justice." (*Hoffman v. Hoffman*, 37 Ill. App. 3d 415, 417, 346 N.E.2d 114. See also *Ruggiero v. Attore*, 51 Ill. App. 3d 139, 366 N.E.2d 470.) Other opinions have expressly stated that courts should be more liberal in setting aside a default judgment when the motion is filed within 30 days of the judgment. (*Adams v. Grace*, 128 Ill. App. 2d 69, 262 N.E.2d 489; *Keafer v. McClelland*, 23 Ill. App. 3d 1035, 321 N.E.2d 136.) Additional factors are the residence of plaintiff in Illinois (*Prenzler v. Prenzler*, 55 Ill. App. 3d 244, 370 N.E.2d 642), the severity of the penalty as a result of the default judgment (*People ex rel. Difanis v. Futia*, 56 Ill. App. 3d 920, 373 N.E.2d 530), and the attendant hardship on the plaintiff to proceed to a trial on the merits (*In re Application of County Collector*, 58 Ill. App. 3d 228, 374 N.E.2d 277; *Dienthal v. Branovacki*, 23 Ill. App. 3d 726, 320 N.E.2d 177). Usually "[a]ny imposition that a trial may be on the plaintiff is outweighed by the respected maxim that a litigant is entitled to his day in court." *Karaskiewicz v. Karaskiewicz*, 38 Ill. App. 3d 509, 512, 348 N.E.2d 184.

The ultimate question is thus whether, applying the above factors to the present case, substantial justice is being done between Balaco and Wickham and whether it is reasonable to require Balaco to go to trial on the merits. If the answer is yes, a new trial should have been ordered on the issue of whether Wickham must idemnify Balaco for the judgment entered in the principal case brought by Dalton.

■■ We believe the trial court should have set aside the default judgment. In an affidavit filed along with his motion to set aside the default judgment, Wickham alleged facts showing a meritorious defense. Balaco filed no counteraffidavits. Thus the statements of fact contained in Wickham's affidavit must be taken as true. (*Becker v. Pescaglia*, 24 Ill. App. 3d 410, 320 N.E.2d 615.) In his affidavit Wickham also asserted the failure of counsel to appear on his behalf as a reasonable excuse for not pursuing his defense. Balaco cites *Morning v. Morning*, 9 Ill. App. 3d 555,

291 N.E.2d 875, where the plaintiff failed to employ an attorney after being advised of the amount of the retainer fee. In this case the affidavit states that Wickham employed an Illinois firm on or about July 8, 1971. Again there is no counteraffidavit denying this assertion. At most, Balaco's motion in opposition alleges that Balaco's attorney never had any communication with the Illinois firm alleged to have been obtained by Wickham.

Contending that Wickham intended to ignore this lawsuit, Balaco refers to correspondence between Balaco's attorney and Wickham's attorney in Oklahoma. However, these communications occurred on or about July 8, 1971, at least one week before Wickham was served with a copy of the third party complaint. This is indicative of his intent to pursue a defense.

■■ The record also contains correspondence between Dalton's attorney and the Illinois firm that Wickham claims to have retained. This correspondence took place in November and December of 1975. A member of the Illinois firm stated in a letter that to the best of his knowledge no one in his firm had ever represented any of the parties involved in the present case. Still, Dalton's attorney's file contained a letter addressed to a former co-counsel from a member of the Illinois firm stating that a member of the Illinois firm did actually represent Wickham. This would not be the first time that a breakdown in office communications or an attorney's negligence resulted in a default judgment. (See *Wynter v. Wynter*, 54 Ill. App. 3d 840, 368 N.E.2d 1104; *Patrick v. Burgess-Norton Manufacturing Co.*, 63 Ill. 2d 524, 349 N.E.2d 52.) In the latter case, the Illinois Supreme Court held that although the plaintiff's attorney had been inattentive, the trial court should have vacated the default judgment. In view of the above analysis and the uncontested assertions in Wickham's affidavit, we hold that Wickham had a reasonble excuse in not presenting his defense.

■■ Several remaining factors also require such a result. Wickham filed his motion within 14 days after receiving notice of the judgment. This is a short period of time, considering the complex facts and issues involved and the miles between Wickham's residence in Oklahoma and his present Illinois attorney. In addition, the severity of the liability of $75,000 to which Wickham could be subjected compels a trial on the merits unless it would work a hardship on Balaco. Balaco lives in Illinois and thus would not be subjected to the imposition of a trial in a place apart from his residence. Further, Balaco's motion to strike Wickham's motion to set aside the default judgment contains no allegations that proceedings to a trial on the merits of the third-party action would impose a hardship upon him.

For the foregoing reasons we reverse and remand this cause to the circuit court of Christian County for trial on the merits.

Reversed and remanded with directions.

KUNCE and EBERSPACHER, JJ., concur.